IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAN MCCONCHIE, in his official capacity as Minority Leader of the Illinois Senate and individually as a registered voter, and JIM DURKIN, in his official capacity as Minority Leader of the Illinois House of Representatives and individually as a registered voter,<br><br>   Plaintiffs,<br><br>  vs.<br><br>ILLINOIS STATE BOARD OF ELECTIONS, CHARLES W. SCHOLZ, IAN K. LINNABARY, WILLIAM M. MCGUFFAGE, WILLIAM J. CARDIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASANDRA B. WATSON, and WILLIAM R. HAINE, in their official capacities as members of the Illinois State Board of Elections, EMANUEL CHRISTOPHER WELCH, in his official capacity as Speaker of the Illinois House of Representatives, the OFFICE OF SPEAKER OF THE ILLINOIS HOUSE OF REPRESENTATIVES, DON HARMON, in his official capacity as President of the Illinois Senate, and the OFFICE OF THE PRESIDENT OF THE ILLINOIS SENATE,<br><br>   Defendant. | Case No. 1:21-cv-03091<br><br>Judge Robert M. Dow, Jr.<br><br>Magistrate Judge Sheila M. Finnegan |

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR EXPEDITED SCHEDULE AND TRIAL**

  Plaintiffs Dan McConchie, in his official capacity as Minority Leader of the Illinois Senate and individually as a registered voter, and Jim Durkin, in his official capacity as Minority Leader of the Illinois House of Representatives and individually as a registered voter ("Plaintiffs"), submit this memorandum of law in support of their motion, pursuant to Federal Rules of Civil Procedure 16 and 57, for the entry of an order setting expedited dates for discovery and a speedy trial on their

claims, including their claim for a declaration that the state legislative redistricting plan, Public Act 102-0010, enacted on June 4, 2021 (the "Redistricting Plan" or "Plan"), is unconstitutional and thus void *ab initio*.

## I.
## INTRODUCTION

A primary goal of redistricting is to craft new district maps that reflect current population counts to ensure compliance with the "one-person, one-vote" principle enshrined in the Equal Protection Clause of the Fourteenth Amendment, which mandates that state legislative districts be substantially equal in population. *Reynolds v. Sims*, 377 U.S. 533, 577 (1964). To that end, the United States Census Bureau (the "Census Bureau" or "Bureau") has declared that the "2020 Census counted every person living in the United States and the five U.S. territories."[1] These official population counts are recognized as the best source of population data to achieve the constitutionally-mandated population equality for legislative districts and are presumptively valid for redistricting purposes. *Karcher v. Daggett*, 462 U.S. 725, 738 (1983).

While the Census Bureau usually provides states with these official population counts by April 1st of the year after the census, the Bureau has announced that census data collection and processing from the 2020 census will be delayed until mid-August. As Plaintiffs detailed in their Complaint, rather than wait for these official population counts, the General Assembly chose to ram through its Plan using inappropriate estimates from survey responses to avoid the automatic transfer of redistricting responsibility to a bipartisan commission. Compl., ¶¶ 1, 48, Doc. No. 1. But this resulted in an unconstitutional Plan. *Id.* ¶¶ 61–78.

Despite this grave error by the General Assembly, there is still time to make things right. In particular, the mid-August date when the Census Bureau will release official census counts for

---

[1] 2020 Census, census.gov (June 13, 2021), https://www.census.gov/.

redistricting provides sufficient time for the bipartisan commission constituted under Article IV, Section 3 of the Illinois Constitution to complete the redistricting process by the October 5, 2021, date contemplated by the Constitution. To achieve this, however, requires an expedited discovery and trial schedule—a realistic scenario given that discovery will be narrow and focused on only a few salient issues. The Proposed Order being submitted with Plaintiffs' Motion proposes a schedule that accomplishes this objective and thereby ensures the protection of Illinois citizens' constitutional rights.

## II.
## BACKGROUND

**A.     The State Legislative Redistricting Process**

Article IV, Section 3, of the Illinois Constitution outlines the legislative redistricting process: "In the year following each Federal decennial census year, the General Assembly . . . shall redistrict the [Senate] Districts and the Representative Districts." *Id.* §3(b). If "no redistricting plan becomes effective by June 30 . . ., a Legislative Redistricting Commission shall be constituted." *Id.* "The Commission shall consist of eight members, no more than four of whom shall be members of the same political party." *Id.* If the Commission is unable agree on a plan by August 10, the Illinois Supreme Court must "submit the names of two persons, not of the same political party, to the Secretary of State not later than September 1," who then has until September 5th to publicly "draw by random selection the name of one of the two persons to serve as the ninth member of the Commission." *Id.* The nine-member Commission shall strive to file a "redistricting plan approved by at least five members" with the Secretary of State by October 5th. *Id.*

**B.     The Next Primary Election**

The Illinois Election Code requires that the next general primary election be held on March 15, 2022. 10 Ill. Comp. Stat. ("ILCS") 5/2A-1.1. To get on the ballot for this primary election, a

-3-

candidate must submit a petition for nomination with Defendant Illinois State Board of Elections ("Board of Elections"). 10 ILCS 5/7-10. Such petitions for state senator must be signed "by at least 1,000 but no more than 3,000 of the qualified [voters] of the candidate's party in his legislative district," while petitions for the state representative must be "signed by at least 500 but not more than 1,500 of the qualified [voters] of the candidate's party in his or her representative district." 10 ILCS 5/8-8. Thus, the districts must be set by the time a candidate sets out to collect signatures.

When the nomination is for a state legislative office, "such petition for nomination shall be filed . . . not more than 113 and not less than 106 days prior to the date of the primary." 10 ILCS 5/8-9(1). Candidates seeking nomination may start collecting signatures "90 days preceding the last day . . . for the filing" of a petition. 10 ILCS 5/7-10. Accordingly, candidates for the next general primary elections may start circulating their petitions on *August 31, 2021*—less than three months away—and must submit them by *November 29, 2021*—a little over five months away.

On May 31, 2021, the last day of the legislative session, the General Assembly passed Senate Bill ("S.B.") 825, which would extend the primary election to June 28, 2022, and the first day to circulate nominating petitions to January 13, 2022, *see* S.B. 825, 102nd Gen. Assemb. (Ill. 2021); petitions would be due between March 7, 2022, and March 14, 2022, *Id*. But the General Assembly hasn't presented this bill to Governor Pritzker, and per the Illinois Constitution it has until June 30, 2021, to do so. Ill. Const. 1970, art. IV, § 9 ("Every bill passed by the General Assembly shall be presented to the Governor within 30 calendar days after its passage."). The Governor has 60 days to then approve or return the bill. Ill. Const. 1970, art. IV, § 9. This legislation thus has no current force and effect and may never have any.

**C.    Plaintiffs' Complaint**

Plaintiffs' Complaint states a section 1983 claim, 42 U.S.C. § 1983, based on Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment (Count I) and seeks a

declaration under sections 2201 and 2202 of the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (Count II), that the Plan violates the "one person, one vote" rule and is thus unconstitutional, invalid, and *void ab initio*. Compl. ¶¶ 81–97.[2] As discussed at length in the Complaint, the Bureau usually provides to the states the official census population counts by April 1st of the year after the census. *Id.* ¶¶ 3, 45, 50. Although delayed this year, the Bureau has said that it will provide the states with the data files necessary for redistricting by August 16, 2021. *Id.* ¶ 47.[3]

The Redistricting Plan, passed by the General Assembly and later signed by Governor Pritzker into law, lacked the official population counts from the decennial census. Compl. ¶ 4 (citing Bill Status of H.B. 2777, Illinois General Assembly). Instead, the Plan uses ACS five-year population estimates from 2015 through 2019 as the main source of population data to draw Senate and Representative Districts. *Id.* (citing Pub. Act 102-0010, at § 5(d) (explaining that the Plan is based on 2015–2019 ACS estimates)). While the Census Bureau conducts the ACS, the estimates from that survey are not intended to be, and are not, a proper substitute for the official census numbers. *Id.* (citing *See* ACS Key Facts, Census.gov, at 1, https://www.census.gov/). Nor is it proper to use ACS estimates for drawing district boundaries. *Id.* The Bureau itself has warned that ACS estimates are not a viable alternative to the official decennial census numbers. *Id.*; *see also Missouri State Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Ferguson-Florissant Sch. Dist.*, 201 F. Supp. 3d 1006, 1022 (E.D. Mo. 2016), aff'd, 894 F.3d 924 (8th Cir. 2018) ("Because ACS population estimates are based on a sample, they are subject to sampling

---

[2] Plaintiffs have also brought a claim for Writ of Mandamus (Count III) to direct the Speaker of the House of Representatives and the President of the Senate appoint representatives to the bipartisan commission. *See* Complaint ¶¶ 98–102.

[3] *See also* U.S. Census Bureau Statement on Release of Legacy Format Summary Redistricting Data File, Census.gov (Mar. 15, 2021), https://www.census.gov/.

bias, *i.e.*, error margins or confidence intervals"); *Pope v. Cty. of Albany*, No. 1:11-CV-0736 LEK/CFH, 2014 WL 316703, at *13 n. 22 (N.D.N.Y. Jan. 28, 2014) ("The Census Bureau acknowledged that its American Community Survey, a collection of survey estimates on statistics such as CVAP, is less reliable than Census data and not intended to be used in redistricting"); *Benavidez v. Irving Indep. Sch. Dist., Tex.*, 690 F. Supp. 2d 451, 458 (N.D. Tex. 2010) ("the ACS Guide cautions that ACS data have greater margins of error than do traditional census data").

The Redistricting Plan does not ensure that the Senate and Representative Districts satisfy the constitutional mandate of substantially equal populations given its use of ACS estimates for population data for many reasons, including that, unlike the decennial census, which represents a complete count of the population, the ACS estimates represent a small sampling of addresses and are therefore subject to sampling errors and imprecision.[4] In addition to the Plan violating the "one person, one vote" principle, it violates the Equal Protection Clause because it is arbitrary and discriminatory. As for arbitrariness, among other things, the General Assembly didn't establish any substantive legislative record to support the use of ACS estimates. Compl. ¶ 68. In committee hearings and floor debates, the Plan's legislative sponsors professed to have no knowledge of precisely what data were used, how the data were manipulated to work for redistricting purposes, or even who drew the maps. *Id.* As explained in the Complaint, the Plan is also discriminatory because the use of ACS estimates results in a large differential undercount of minority voters, thereby ensuring that historically undercounted minority communities will continue to be underrepresented and lose their right to an equal vote in the legislature. *Id.* ¶¶ 74–78.

---

[4] *See* ACS Key Facts, at 2 ("In the United States and Puerto Rico, about 250,000 addresses per month receive the American Community Survey. This is equal to about one-in-480 addresses a month, or one-in-40 in a year.").

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 57 states, in relevant part: "The court may order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57. Courts routinely rely on Rule 57 to authorize expedited proceedings in declaratory judgment actions. *John Nuveen & Co., Inc. v. New York City Hous. Dev. Corp.*, No. 86 C 2583, 86 C 2817, 1986 WL 5780, at *8 (N.D. Ill. May 9, 1986) ("The court finds that it has authority, pursuant to Rule 57, to expedite proceedings in order to hear plaintiffs' request for declaratory relief in a timely (for their purposes) fashion."); *see also Tri-State Generation and Transmission Ass'n, Inc. v. BNSF Ry. Co.*, No. CV 08-272-PHX-MHM, 2008 WL 2465407, at *7 (D. Ariz. June 17, 2008) ("[I]t is within the Court's discretion to order a speedy hearing on Plaintiffs' declaratory judgment claim."). Rule 57's advisory committee notes support its use in such a fashion, noting that a declaratory judgment "is appropriate when it will 'terminate the controversy' giving rise on undisputed or relatively undisputed facts," and "the Rule operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion." Fed. R. Civ. P. 57 advisory committee's note to 1937 amendment.

Said differently, courts expedite declaratory judgment actions where their resolution would "'terminate the controversy' or at least substantially narrow the issues," *Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, No. SACV 14-1214 DOC (ANx), 2014 WL 4181457, at *3 (C.D. Cal. Aug. 21, 2014) (quoting Fed. R. Civ. P. 57), or "the determination is largely one of law, and factual issues (while expedited discovery is permitted and frequently granted) are not predominant," *Cty. of Butler v. Wolf*, No. 2:20-CV-677, 2020 WL 2769105, at *2 (W.D. Pa. May 28, 2020). Also, importantly, as with requests for injunctive relief, "expedited proceedings are especially warranted where there are imminent or ongoing violations of important rights." *Id.* (citing *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527 (3d Cir. 2001)); *see also Miller v. Warner Literary Group,*

*LLC*, No. 12-cv-2871-WJM-KLM, 2013 WL 360012, at *2 (D. Col. January 30, 2013) ("Given this imminent deadline, the Court finds good cause to resolve" a motion for declaratory judgment "on an expedited basis").

## IV.
## ARGUMENT

Every factor that district courts typically consider when determining whether to expedite a declaratory judgment action under Rule 57 weighs in favor of expediting this action. *First*, the need to evaluate the constitutionality of the Plan is urgent given that the dates to begin seeking signatures for nominating petitions and submit those petitions to the State Board of Elections are imminent. Courts regularly place cases on an expedited track where the issues raised in the matter, and the relief sought, could "seriously impact" a looming election. *Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1322 (S.D. Fla. 2008). *Second*, the parties should only require limited discovery, and the factual record should be mostly undisputed. As noted above, Rule 57's advisory committee notes make plain that these factors justify a speedy hearing. Fed. R. Civ. P. 57 advisory committee's note to 1937 amendment; *see also Wolf*, *supra* at 7. *Lastly*, expediting this action is appropriate because resolution of Plaintiff's claim for "declaratory judgment would terminate the controversy" regarding the Plan's constitutionality. *Allergan*, 2014 WL 4181457, at *3.

**A.    The Court Should Enter An Order Expediting This Proceeding Under Rule 57**

As discussed more below, the Court should expedite the proceeding to determine whether or not the Redistricting Plan is unconstitutional and thus void *ab initio* to (1) provide certainty to potential state legislative candidates contemplating a 2022 primary election run and (2) allow the bipartisan commission mandated from the Illinois Constitution enough time to file a constitutional and valid redistricting plan if the Court invalidates the Plan. Indeed, courts regularly rely on these types of election-related exigencies when expediting proceedings under Rule 57.

For instance, in *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5658392, at *1 (W.D. Pa. Sept. 23, 2020), the plaintiffs sought a declaration that, among other things, Pennsylvania officials violated "the Election Code and the Constitution by failing to provide sufficient notice of, or select appropriate sites for, drop-box locations." The plaintiff requested an expedited hearing under Rule 57 to "provide the parties with certainty as far ahead of the general election as possible." *Id*. at *2. The court granted the motion, imposing a schedule that required the parties to complete limited fact discovery within a week of the order, and setting an "an evidentiary hearing under Rule 57" three weeks after the order date and just under six weeks before the general election. *Id*. at *2–5. In *Arizona Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *3 (D. Ariz. Nov. 3, 2016), the plaintiffs sued the secretary of state less than a month before general election, seeking a declaration that, among other things, "all otherwise eligible Arizona voters who submitted a valid voter registration application . . . before midnight on October 11, 2016 are eligible to vote in the November 8 Election." "In light of the looming general election, the Court ordered" an "expedited trial on the merits" a little over two weeks before the election. *Id*. at *4; *see also Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1321–22 (S.D. Fla. 2008) ("[T]hree weeks before the November 2, 2004, general election, Plaintiffs filed their initial Complaint challenging the denial of their voter applications and seeking injunctive relief. . . . Since the issues raised, and the relief sought, could have seriously impacted the national (and state) election set a few weeks later, the Court addressed the issues on an extremely expedited basis."); *cf. Hayes v. Williams*, 341 F. Supp. 182, 186 n. 2 (S.D. Tex. 1972) ("Because of the brief time remaining before the election, and the resultant urgency of a decision in this matter, the court, in order to expedite the judicial process, has decided to forego the luxury of an oral hearing and instead to render its decision in written form, as appears herein.").

With these decisions in mind, we now turn to the reasons for the urgency here.

1. <u>Expedited proceeding would provide certainty for the next primary election.</u>

An expedited proceeding here is essential to provide certainty to potential candidate for the state legislature. Candidates typically have three months between the passage of the legislative redistricting plan and the beginning of the nominating petition circulation period to decide which district to run in. *See* 10 ILCS § 5/7-10. In nominating petitions, candidates must identify the district in which they want to run and collect signatures from voters within that subdivision. *See* 10 ILCS §§ 5/7-10, 5/8-8. This is complicated by the residency requirements within the Illinois Constitution applicable to candidates for the General Assembly after the adoption of a Redistricting Plan: "In the general election following a redistricting, a candidate for the General Assembly may be elected from any district which contains a part of the district in which he resided at the time of the redistricting and reelected if a resident of the new district he represents for 18 months prior to reelection." Ill. Const. 1970, art. IV, § 2(c). Thus, to complete a nominating petition, would-be candidates need to know the exact boundaries of the districts. It is not enough to merely approve the plan on the eve of the petition circulation period, which begins August 31, 2021. If the Court invalidates the Redistricting Plan, a valid one must be approved in enough time for potential candidates to reasonably determine in which districts to run and assemble the signatures needed for their petitions.

The possible extension of the deadlines for the primary election via S.B. 825 makes no difference. As of now, Governor Pritzker has not signed S.B. 825 into law, and it is not clear if he will within the 90-day period (in total) allowed for the bill to be presented to him (30 days) and for him to approve or return it to the General Assembly (60 days). *See* Ill. Const., art. IV, § 9. Accordingly, as of now, no deadlines have been moved. And even if Governor Pritzker signs S.B. 825 into law, the period for circulating nominating petitions would commence on January 13,

2022, which is less than *seven months away*. The Court's schedule will still need to be expedited to resolve the issues with the Redistricting Plan quickly enough to grant prospective candidates time to organize their political campaigns and gather signatures for their nominating petitions.

Without an expedited schedule, the parties would run a considerable risk of having to create a new Plan *after* nominating petitions have begun to be circulated or even been submitted, which could potentially invalidate those petitions that no longer have enough signatures from qualified electors from within the appropriate district. Such a result would be disastrous, as it would introduce uncertainty and confusion into the 2022 election cycle. The only way to assure that a valid and constitutional Plan is approved in enough time for candidates to organize their campaigns and submit their petitions is to assess the constitutionality of the Plan on an expedited schedule.

  2. <u>The bipartisan commission needs time to do its work</u>.

The fundamental flaws in the Redistricting Plan create an additional urgency: the need to approve a constitutional and valid redistricting plan. Since the Bureau will not release the official population counts until mid-August, well after the June 30th deadline for the General Assembly to approve a plan, the constitutionally-mandated responsibility to draw a redistricting plan will lie with a bipartisan redistricting commission. Ill. Const. 1970, art. IV, §3(b). The commission is tasked with trying to approve a redistricting plan by October 5, 2021. *Id.* The commission's process for creating and approving a new plan, however, takes time. *See e.g., Burris v. Ryan*, 147 Ill. 2d 270, 276–80 (1991) (87 days between formation of the commission and approval of a Redistricting Plan). Accordingly, it's imperative that the Court resolve Plaintiffs' declaratory judgement claim as quickly as possible so the commission can approve a plan in time for the election season.

**B.** **The Issues For Discovery Are Narrow And Mostly Undisputed Facts**

As the Court recognized in *Wolf*, "expedited discovery is permitted and frequently granted" when courts order speedy proceedings per Rule 57, especially when factual issues "are not

predominant." 2020 WL 2769105, *2; *see also BNSF Ry. Co.*, 2008 WL 2465407, at *7 (ordering a speedy hearing on the plaintiffs' declaratory judgment claim under Rule 57 because "this issue appears to be a fairly straight-forward issue"). The same principles are embodied in Rule 57's advisory committee. *See* Fed. R. Civ. P. 57 advisory committee's note to 1937 amendment.

Here, Plaintiffs intend to conduct only limited fact discovery on a straightforward factual issue of which there should be little dispute, such as:

- the decision-making and rationale surrounding the General Assembly's decision to use ACS estimates to draw district boundaries for the Plan, including any analysis regarding the constitutionality of using ACS estimates for redistricting.

- the methodology that the General Assembly employed in drawing boundaries for the Plan, including how and why it used other estimates other than the ACS estimates in drawing the Plan and any analysis of the sampling errors inherent in using ACS estimates.

- the population counts for each legislative district in the Plan and the identity of everyone who participated in completing the Redistricting Plan.

Plaintiffs intend to serve limited discovery requests on Defendants and plan to take only a small number of depositions. Also, while Plaintiffs expect that both parties will need to disclose experts, expert discovery should be limited too. As set forth in the proposed schedule (Mot. Ex. A), these tasks, as well as Defendants' likely reciprocal discovery,[5] can be accomplished on an expedited, yet fair, schedule.

### C.    Resolving the Declaratory Action Will Terminate The Present Controversy

As denoted in Rule 57's advisory committee notes, another factor that a district court may consider in deciding whether to expedite proceedings under Rule 57 is if "declaratory judgment

---

[5] Defendants should need very little, if any, discovery from Plaintiffs.

would 'terminate the controversy' or at least substantially narrow the issues." *BNSF Ry. Co.*, 2008 WL 2465407, at *7 ("[T]he Court agrees with Plaintiffs that the resolution of Plaintiffs' declaratory judgment claim is likely to be dispositive in this matter. Thus, the Court will grant Plaintiffs' motion for an expedited hearing on its declaratory judgment claim."). Again, Plaintiffs seek a declaration that the improper use of the ACS estimates instead of the official census population counts to create the Redistricting Plan rendered the Plan *void ab initio*. This is the only substantive issue presently before the Court, and its resolution of this narrow issue will only leave Plaintiffs' request for writ of mandamus to resolve if the Court indeed finds that the Plan is invalid. Accordingly, ordering a "speedy hearing" under Rule 57 is appropriate here.

## V.
## CONCLUSION

For the reasons discussed above and as set forth in their Motion, Plaintiffs respectfully request that the Court grant their Motion and order an expedited schedule and trial.

-14-

Dated: June 17, 2021

/s/ Phillip A. Luetkehans
Phillip A. Luetkehans
Brian J. Armstrong
LUETKEHANS, BRADY, GARNER &
ARMSTRONG, LLC
105 E. Irving Park Road
Itasca, Illinois  60143
Tel: (630) 760-4601
Fax: (630) 773-1006
pal@lbgalaw.com
bja@lbgalaw.com
*Counsel for Plaintiffs*

Respectfully submitted,

/s/ Charles E. Harris, II
Charles E. Harris, II
Mitchell D. Holzrichter
Thomas V. Panoff
Christopher S. Comstock
Heather A. Weiner
Christopher A. Knight
Joseph D. Blackhurst
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois  60606
Tel: (312) 782-0600
Fax: (312) 701-7711
charris@mayerbrown.com
mholzrichter@mayerbrown.com
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com
hweiner@mayerbrown.com
cknight@mayerbrown.com
jblackhurst@mayerbrown.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on the 17th day of June, 2021, the foregoing **Memorandum of Law in Support of Motion For Expedited Schedule and Trial** was placed with a process server, and I instructed the process server to serve the parties of record with the Memorandum of Law at the addresses set forth below:

ILLINOIS STATE BOARD OF ELECTIONS and
CHARLES W. SCHOLZ,
IAN K. LINNABARY,
WILLIAM M. MCGUFFAGE,
WILLIAM J. CADIGAN,
KATHERINE S. O'BRIEN,
LAURA K. DONAHUE,
CASANDRA B. WATSON, and
WILLIAM R. HAINE, in their official capacities as members of the Illinois State Board of Elections
100 W. Randolph Street, Suite 14-100
Chicago, IL 60601

EMANUEL CHRISTOPHER WELCH, in his official capacity as Speaker of the Illinois House of Representatives, and
The OFFICE OF SPEAKER OF THE ILLINOIS HOUSE OF REPRESENTATIVES
300 Capitol Building
Springfield, Illinois 62706

DON HARMON, in his official capacity as President of the Illinois Senate, and
The OFFICE OF THE PRESIDENT OF THE ILLINOIS SENATE
327 Capitol Building
Springfield, Illinois 62706

             /s/ Charles E. Harris, II