IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAN MCCONCHIE, in his official capacity as Minority Leader of the Illinois Senate and individually as a registered voter, and JIM DURKIN, in his official capacity as Minority Leader of the Illinois House of Representatives and individually as a registered voter, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-CV-03091 |
| ILLINOIS STATE BOARD OF ELECTIONS, CHARLES W. SCHOLZ, IAN K. LINNABARY, WILLIAM M. MCGUFFAGE, WILLIAM J. CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASANDRA B. WATSON, and WILLIAM R. HAINE, in their official capacities as members of the Illinois State Board of Elections, EMANUEL CHRISTOPHER WELCH, in his official capacity as Speaker of the Illinois House of Representatives, the OFFICE OF SPEAKER OF THE ILLINOIS HOUSE OF REPRESENTATIVES, DON HARMON, in his official capacity as President of the Illinois Senate, and the OFFICE OF THE PRESIDENT OF THE ILLINOIS SENATE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Circuit Judge Michael B. Brennan Chief Judge Jon E. DeGuilio Judge Robert M. Dow, Jr., Three-Judge Court Pursuant to 28 U.S.C. § 2284(a) |
| Defendants. | ) ) | |

## DEFENDANTS WELCH, OFFICE OF THE SPEAKER, HARMON, OFFICE OF THE PRESIDENT'S RULE 12(B) MOTION TO DISMISS

# TABLE OF CONTENTS

Introduction ...................................................................................................1

Argument ......................................................................................................2

I.     Plaintiffs Lack Standing to Challenge the General Assembly's Decision
       to Utilize ACS Data in its Redistricting Plan .........................................2

II.    The Supreme Court Has Concluded that States Are Not Required to
       Use Census Population Figures in Redistricting, and Courts Have
       Routinely Accepted the use of ACS Data ................................................7

III.   Plaintiffs' Claims are Not Ripe..............................................................11

IV.    Plaintiffs' Complaint Fails to State a Claim for Mandamus Relief
       Against Speaker Welch and President Harmon ...................................13

       A.     Plaintiffs do not have a clear right to relief because this Court
              lacks jurisdiction to order state officials to comply with state
              law.................................................................................................13

       B.     Plaintiffs cannot establish a clear right to relief because there is
              no Legislative Redistricting Commission under the Illinois
              Constitution. ................................................................................14

       C.     If the Court finds there is an open question of law over whether
              the Legislative Redistricting Commission may be constituted,
              this Court should decline to exercise supplemental jurisdiction
              over Count III. ..............................................................................17

       D.     Plaintiffs have failed to establish they have exhausted state
              court avenues of relief. ................................................................18

Conclusion....................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. United States Dep't of Com.,*
    2021 WL 2668810 (M.D. Ala. June 29, 2021) ........................................................... 9

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................................................. 11

*Baker v. Carr,*
    369 U. S. 186 (1962) ................................................................................................. 3

*Banks v. Illinois*
    258 Fed.Appx. 902 (7th Cir. 2007) ......................................................................... 13

*Brown v. Thomson,*
    462 U.S. 835 (1983) ................................................................................................. 7

*Burnett v. Bowen,*
    830 F.2d 731 (7th Cir. 1987) ................................................................................... 18

*Burns v. Richardson,*
    384 U.S. 73 (1966) ............................................................................................... 7, 8

*In re Campbell,*
    264 F.3d 730 (7th Cir. 2001) ................................................................................... 18

*City of Detroit v. Franklin,*
    4 F.3d 1367 (6th Cir. 1993) ..................................................................................... 8

*Comm. for a Fair & Balanced Map v. Illinois State Board of Elections,*
    835 F. Supp. 2d 563 (N.D. Ill. 2011) ....................................................................... 9

*Coniston Corp. v. Hoffman Estates,*
    844 F.2d 461 (7th Cir. 1988) ............................................................................. 14, 18

*Evenwel v. Abbott,*
    136 S. Ct. 1120 (2016) ......................................................................................... 8, 12

*Garza v. City of Los Angeles,*
    918 F.2d 763 (9th Cir. 1990), *cert. denied,* 498 U.S. 1028 (1991) .......................... 8

ii

*Gill v. Whitford*,
    138 S.Ct. 1916 (2018) ............................................................................... 3, 4, 5, 6

*Hill v. Baxter Healthcare Corp.*,
    405 F.3d 572 (7th Cir. 2005) ............................................................................... 13, 17

*Holloway v. City of Virginia Beach*,
    2021 WL 1226554 (E.D. VA. Mar. 31, 2021) ......................................................... 10

*Hooker v. Illinois State Board of Elections*,
    2016 IL 121077 ............................................................................................... 14, 17

*Iddir v. I.N.S.*,
    301 F.3d 492 (7th Cir. 2002) ............................................................................... 13

*In re Interrogatories on Senate Bill 21-247 Submitted by the Colorado
General Assembly*,
    2021 WL 2197398 (Colo. 2021) ............................................................................... 10

*Lance* v. *Coffman*,
    549 U. S. 437 (2007) (*per curiam*) ......................................................................... 3

*Leuvano v. State Bar of Texas*
    2011 WL 334291 (S.D. Il 2011) ............................................................................... 14

*Martin v. Venables*,
    401 F. Supp. 611 (D. Conn. 1975) ........................................................................... 8

*Meeks v. Avery*,
    251 F. Supp. 245 (D. Kan. 1966) ........................................................................... 8

*Meridian Sec. Ins. Co. v. Sadowski*,
    441 F.3d 536 (7th Cir. 2006) ............................................................................... 12

*Offutt v. Kaplan*
    884 F.Supp 1179 (N.D. Ill. Apr. 12, 1995) ............................................................. 14

*People v. Blair*,
    2013 IL 114122 ............................................................................................... 15

*Reynolds* v. *Sims*,
    377 U. S. 533 (1964) ......................................................................................... 7

*Spokeo, Inc.* v. *Robins*,
    136 S. Ct. 1540 (2016) ..................................................................................... 3

iii

*Tabb v. Jeffeys*
    2020 WL 3414616 (S.D. Ill. 2020) ........................................................................ 14

*Tucker v. U.S. Dep't of Com.*,
    958 F.2d 1411 (7th Cir. 1992) ............................................................................ 8

*White v. Madison County Judicial System*
    2019 WL 6312389 ............................................................................................ 14

*Wilson v. Illinois Cent. R. Co.*,
    2012 WL 135446 (N.D. Ill. Jan. 12, 2012) ........................................................ 9

*Wisconsin Cent., Ltd. v. Shannon*,
    539 F.3d 751 (7th Cir.2008) ............................................................................ 11

*Zahn v. North American Power & Gas, LLC*,
    2016 IL 120526 ................................................................................................ 5

**Statutes**

28 U.S.C. § 1367(c)(1) ...................................................................................... 17

All Writs Act, 28 U.S.C. § 1651(a) .............................................................. 12, 13

Pubic Act 102-0010 ...................................................................................... 14, 15

**Other Authorities**

Federal Rule of Civil Procedure 12(b) .......................................................... 1, 18

Ill. Const. (1970) ............................................................................... 1, 14, 15, 18

1042768\308556402.v1

Defendants Emanuel Christopher Welch, Office of the Speaker of the Illinois House of Representatives, Don Harmon, and Office of the President of the Illinois Senate (collectively "the Presiding Officer Defendants"), by their attorneys, respectfully request that this Court dismiss Plaintiffs' Complaint in accordance with Federal Rule of Civil Procedure 12(b). In support, the Presiding Officer Defendants state as follows.

## Introduction

Plaintiffs' Complaint asks this Court to find the Illinois legislative redistricting plan that became effective on June 4, 2021 unconstitutional for the sole reason that the General Assembly used the U.S. Census Bureau's American Community Survey ("ACS") data rather than (still) unavailable 2020 final U.S. Census Bureau P. L. 94-171 data ("census data"). As a remedy, Plaintiffs—the Republican minority leaders of the Illinois House and Senate—ask this Court to find the redistricting plan void *ab initio*, and issue a writ of mandamus to the Speaker of the House and President of the Senate to appoint members to a Legislative Redistricting Commission. However, the final census data at issue will not be available until after the Illinois Constitution's deadline for the bi-partisan Commission to approve a plan. The redistricting plan would therefore be placed in the hands of the Commission that includes one tie-breaking member to be selected randomly from two names of people from opposite political parties. Ill. Const. (1970), art. IV, § 3(b).

As a result, Plaintiffs' Complaint indirectly asks this Court to reject the redistricting plan passed by majorities in the General Assembly and approved by the

Governor, and instead give Plaintiffs and their political party a 50/50 shot at enacting their own redistricting plan for the State, despite their super-minority status in both chambers of the legislature. All because the General Assembly used the best data available to fulfill their constitutional responsibility to pass a plan prior to Illinois Constitution's June 30, 2021 deadline.

Political motivations aside, this Court should dismiss Plaintiffs' Complaint for the following legal deficiencies. *First*, Plaintiffs' lack standing because they have made no district specific allegations of harm, *Second*, no Court has ever held the use of ACS data in redistricting is improper, much less unconstitutional *per se*, *Third*, Plaintiffs claims are not ripe because the 2020 census data has still not been released, and *Lastly*, Plaintiffs have failed to state a claim for mandamus relief.

## Argument

### I. Plaintiffs Lack Standing to Challenge the General Assembly's Decision to Utilize ACS Data in its Redistricting Plan.

In challenging the current redistricting plan, Plaintiffs allege that *any* plan relying on ACS's five-year population estimates from 2015 through 2019 is *per se* unconstitutional in violation of one-person, one-vote principles of the Equal Protection Clause. According to Plaintiffs, this alleged unconstitutionality arises because any such plan is destined to have substantial population deviations when compared to as yet unreleased complete census data. Dkt. #1 ("Compl."), ¶ 6.

The three-part test for Article III standing requires that a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

1042768\308556402.v1

decision." *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1547 (2016). The Supreme Court has also concluded that "[t]he right to vote is 'individual and personal in nature,' [ ] and that 'voters who allege facts showing disadvantage to *themselves* as individuals have standing to sue' to remedy that disadvantage[.]" *Gill v. Whitford*, 138 S.Ct. 1916, 1929 (2018) (emphasis added) (quoting *Reynolds* v. *Sims,* 377 U. S. 533, 561 (1964) and *Baker v. Carr*, 369 U. S. 186, 206 (1962).

Plaintiffs lack standing to bring this claim because they have not alleged that they suffered any injury in fact, nor have they alleged that the actions of Defendants resulted in any "disadvantage to themselves as individuals" sufficient to confer Article III standing. In their Complaint, Plaintiffs tellingly identify their respective Legislative and Representative districts only once – in the section identifying the parties. Compl. ¶¶ 15-16. Nowhere do Plaintiffs allege that the fact that they reside in their districts has caused them, or any other residents of their districts, any injury at all. Plaintiffs also fail to allege any other personal injury to themselves anywhere in the Complaint that would give them standing in this case.

The Supreme Court has held that, in the redistricting context, "a plaintiff seeking relief in federal court must first demonstrate that he has standing to do so," including that he has "a personal stake in the outcome," distinct from a "generally available grievance about government." *Gill*, 138 S.Ct. at 1923 (*citing Baker*, 369 U. S. at 204, and *Lance* v. *Coffman*, 549 U. S. 437, 439 (2007) (*per curiam*)).

In *Gill*, individual Wisconsin voters challenged the redistricting plan approved by the Wisconsin legislature. 138 S.Ct. at 1923. The Supreme Court recognized that

1042768\308556402.v1

some of the *Gill* plaintiffs alleged the necessary personal injury, but "never followed up with the requisite proof." *Id*. The requisite proof went to Plaintiffs' standing. The Court held a person's right to vote is "individual and personal in nature" and "to the extent the plaintiffs' alleged harm is the dilution of their votes, that injury is district specific." *Id*. at 1929-1930. At trial in *Gill*, however, the plaintiffs "failed to meaningfully pursue their allegation of meaningful harm" and instead rested their case "on their theory of statewide injury to Wisconsin Democrats[.]" *Id*. at 1932. Accordingly, the Supreme Court held the plaintiffs failed to demonstrate standing. *Id*. at 1934.

In contrast, Plaintiffs here have not even alleged any injury that is personal to them at all. They have not alleged—nor can they allege—that their personal voting strength is diluted by the current redistricting plan. They have not alleged, for example, that their votes are diluted by overpopulation in their districts when compared to the voting power of those residing in less populated districts. In *Gill*, the Supreme Court squarely tackled this situation by noting that "the plaintiffs' alleged harm is the dilution of their votes" and that "injury is district specific." *Id*. at 1920-1921. In holding that the *Gill* Plaintiffs' failure to establish a district specific injury deprived them of standing to challenge the redistricting plan, the Supreme Court concluded that "[a] plaintiff who complains of gerrymandering, but who does not live in a gerrymandered district, 'assert[s] only a generalized grievance against governmental conduct of which he or she does not approve.'" *Id*. at 1921, *quoting United States* v. *Hays*, 515 U. S. 737, 745 (1995) (holding a plaintiff

4

complaining of racial gerrymandering has standing only to challenge their own district). Here, as in *Gill* and *Hays*, Plaintiffs merely complain of vote dilution, but neither alleges to live in a diluted district. Accordingly, as in *Gill*, Plaintiffs are asserting "only a generalized grievance" against the Illinois General Assembly's decision to use ACS data in creating the redistricting plan, a decision of which they "do not approve." *Gill*, at 1921.

Furthermore, similar to *Gill,* Plaintiffs allege they "bring this lawsuit to protect the fundamental rights of Illinois voters and to invalidate the state legislative redistricting plan passed by the Illinois General Assembly on May 28, 2021 and signed into law by Governor Pritzker on June 4, 2021." Compl. ¶ 1. Likewise, in *Gill*, plaintiffs argued "that their legal injury also extends to the statewide harm to their interest." *Gill*, 138 S. Ct. at 1931. The Supreme Court already rejected the argument that such an allegation of statewide harm conferred standing on plaintiffs: "[O]ur cases to date have not found that this presents an individual and personal injury of the kind required for Article III standing." *Id.* For that reason, Plaintiffs' allegations in their official capacity as Republican minority leaders fare no better than their individual claim.

Plaintiffs also offer nothing more than unsubstantiated allegations of "statewide harm" that the Supreme Court found insufficient to confer standing in *Gill*. For example, Plaintiffs allege that "[t]he use of ACS estimates as the base population data for the Plan creates a number of problems and inaccuracies." Compl. ¶ 62. Plaintiffs further allege that "it is improper to use ACS estimates as the

5

population data for redistricting purposes" because "the ACS estimates creates numerous errors and makes it impossible to determine with any accuracy the population in *any* Senate or Representative District." *Id*. ¶ 66. (emphasis added). Plaintiffs' allegations are not about *their* districts, as required by both *Gill* and *Hays*, but about *every* district within Illinois. A one-person, one-vote complaint cannot be predicated on such generalized allegations.

The gist of Plaintiffs' Complaint is that they simply disagree with the General Assembly's decision to use ACS data to prepare a redistricting plan in furtherance of its undisputed constitutional duty to redraw the legislative districts by June 30, 2021. This disagreement, however, does not confer standing. Plaintiffs' failure to allege any individualized harm to themselves as a result of that decision, demonstrates they lack standing to bring their statewide grievances to this Court.

Regardless of the population data used, Plaintiffs' Complaint lacks any factual allegation of a population deviation between districts in the 2021 redistricting plan required to show a "one person, one vote" violation, much less a significant deviation requiring justification. Without the 2020 census data, Plaintiffs' claims of any deviation, arbitrariness, and discrimination are purely speculative and conclusory and should be rejected. *See Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("we may reject sheer speculation, bald assertions, and unsupported conclusory statements.").

1042768\308556402.v1

II.      **The Supreme Court Has Concluded that States Are Not Required to Use Census Population Figures in Redistricting, and Courts Have Routinely Accepted the use of ACS Data.**

The entire premise of Plaintiffs' Complaint is the use of ACS data, rather than decennial census data, is *per se* unconstitutional. Yet neither the Supreme Court nor any other court has *ever* held that the U.S. Constitution dictates the use of any particular set of data be used in drawing state legislative districts. Instead, the Supreme Court, and other federal courts, have long recognized the flexibility the Constitution affords states in redrawing their own legislative districts.

The Equal Protection Clause requires that "the seats in both houses of a bicameral state legislature must be apportioned on a population basis." *Reynolds v. Sims*, 377 U.S. 533, 568 (1964). Over time, the Court made clear that, as a general matter, a state legislative redistricting plan "with a maximum population deviation under 10%" is presumed to comply with the Fourteenth Amendment, while a plan at or above the 10% threshold "creates a prima facie case of discrimination and therefore must be justified by the State." *Brown v. Thomson*, 462 U.S. 835, 842-43 (1983).

Less than two years after *Reynolds*, the Supreme Court expressly declared that "the Equal Protection Clause *does not require the States to use total population figures derived from the federal census* as the standard by which this substantial population equivalency is to be measured." *Burns v. Richardson*, 384 U.S. 73, 91 (1966) (emphasis added). In *Burns*, the Supreme Court held that Hawaii could use a registered-voter population base, rather than a census based total population number, in apportioning the State Senate. *Id*. at 93-94.

7

The use of non-decennial census data expressly authorized in *Burns* has been echoed for decades by other federal courts, including the Seventh Circuit. *See Tucker v. U.S. Dep't of Com.*, 958 F.2d 1411, 1418 (7th Cir. 1992) *citing Burns*, 384 U.S. at 92-97 ("states are not required to use census figures for the apportionment of their legislatures")); *see also City of Detroit v. Franklin*, 4 F.3d 1367, 1374 (6th Cir. 1993) (finding states are only required to use the best population data available in redistricting); *Garza v. City of Los Angeles*, 918 F.2d 763, 773 (9th Cir. 1990), *cert. denied*, 498 U.S. 1028 (1991) (finding that the practice of using non-decennial census data in redistricting makes sense not only where census data is not available but also where census data is almost a decade old and no longer accurate); *Martin v. Venables*, 401 F. Supp. 611 (D. Conn. 1975) (upholding use of registered voter figures for municipal redistricting, in part because census population figures were out of date and did not reflect recent population growth); *Meeks v. Avery*, 251 F. Supp. 245, 250 (D. Kan. 1966) (finding the use of the state's agricultural census for congressional districts permissible).

More recently, in *Evenwel v. Abbott*, 136 S. Ct. 1120 (2016), the Supreme Court took up the question of whether the Constitution required Texas to use citizen voting age population numbers instead of the state's preferred total population numbers in drawing its districts. The Supreme Court specifically declined to dictate the use of any particular population basis. *Id.* at 1132-22. In his concurring opinion, Justice Thomas concluded: "a State has wide latitude in selecting its population base for apportionment," because "the choice is best left for the people of the States to decide

8

for themselves how they should apportion their legislature." *Id*. at 1142 (Thomas, J. concurring).

This Court has also recognized the validity using of ACS data. In *Wilson v. Illinois Cent. R. Co.*, 2012 WL 135446 (N.D. Ill. Jan. 12, 2012), this Court took judicial notice of racial breakdowns provided via 2005-2009 ACS data, and noted that ACS data has been used by other courts. *Id*. at *3 (collecting cases). The Court explained that "[a]t least one court has expressly found the ACS to be sufficiently accurate and reliable and expressly took judicial notice of data for a particular community." *Id*. (citing *Benavidez v. City of Irving, TX*, 638 F.Supp.2d 709 (N.D. Tex. 2009).

Similarly, this Court also relied upon the five-year ACS survey in upholding Illinois' 2011 Congressional redistricting plan. *Comm. for a Fair & Balanced Map v. Illinois State Board of Elections,* 835 F. Supp. 2d 563, 586 (N.D. Ill. 2011). In doing so, this Court found that "[b]ecause rough proportionality under the totality of circumstances test looks to citizen voting-age population at the statewide level, we find that ACS figures are reliable for this purpose." *Id*. To further support its finding of rough proportionality in Latino representation, the Court accepted the State's expert testimony: "Dr. Lichtman testified that even though these data are derived from samples they are accurate on a statewide level within a few tenths of a percentage point." *Id*.

Similar holdings were made in a federal case before a three-judge panel and the Colorado Supreme Court. *Alabama v. United States Dep't of Com.*, 2021 WL 2668810, at *6 fn. 3 (M.D. Ala. June 29, 2021) (noting that Alabama has the option of

9

using other data for redrawing state legislative districts where the federal decennial census was not taken or was not satisfactory) and *In re Interrogatories on Senate Bill 21-247 Submitted by the Colorado General Assembly*, 2021 WL 2197398, at ¶33 (Colo. 2021) (finding that Colorado's independent redistricting commission could use other reliable sources of population data, including ACS data, in drafting state and congressional plans as long as the final plans comply with constitutional requirements).

Also, in *Holloway v. City of Virginia Beach*, 2021 WL 1226554 (E.D. VA. Mar. 31, 2021), the court concluded, "ACS data is reliable Census data and it is commonly used by expert witnesses in Voting Rights Act cases. The ACS is the only source of local information on the citizen voting age population (CVAP)." *Id*. at 85. The court noted that "sister jurisdictions have consistently relied upon ACS for examining demographic information of minority populations for Section 2 cases." *Id*. at 85-86. In explaining this conclusion, the Court explained:

> ACS data can be relied upon as the Census Bureau has utilized ACS data in lieu of long form survey data since 2010. *Id*. ACS meets the standards which make it indistinguishable in terms of accuracy and reliability from the Census figures. Moreover, ACS sampling errors are transparent and may be accounted for using the margins of error published by the ACS and the use of confidence intervals… [T]he Court concludes that Mr. Fairfax's [the expert witness] use of ACS data is thoroughly documented, has a high degree of accuracy, and is clear, cogent and convincing enough to overcome doubts.

*Id*. (internal citations omitted).

In short, the Illinois General Assembly complied with its constitutional directive to enact a new redistricting plan prior to June 30, 2021. Nothing in the U.S. Constitution or Illinois' Constitution or statutes mandates only the use of final census

10

data in redistricting. The General Assembly's decision to utilize the five-year ACS data was justified under any circumstances based upon all of the precedent for its usage cited above. However, given the fact that the census data was not, and still is not, available to the State, it cannot be seriously argued that the ACS data was not the best data available to the General Assembly at the time. Plaintiffs do not suggest that the General Assembly should have used a different data set – Plaintiffs only suggest that the General Assembly, led by Defendants Welch and Harmon, should have done nothing and simply ignored the directives of the State Constitution. The federal Constitution does not require such inaction on the part of State officials.

## III.    Plaintiffs' Claims Are Not Ripe.

Plaintiffs' Complaint also presents claims that are not yet ripe for adjudication because, under their theory of the case, there is no way to measure the validity of Plaintiffs' equal protection allegations until the Census Bureau issues the 2020 census data.

Ripeness is a justiciability doctrine designed to prevent courts from deciding potential disputes that have not yet crystallized into concrete injuries. The doctrine of ripeness, like other Article III doctrines, is "an idea . . . about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (citation omitted); *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir.2008) ("Ripeness is predicated on the 'central perception . . . that courts should not render decisions absent a genuine need to

11

resolve a real dispute.'") (citations omitted). Ripeness is ultimately a question of timing. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006).

Plaintiffs' entire Complaint is based on speculative allegations about why Plaintiffs *believe* ACS data is not as accurate as the census count. *See*, e.g., *Id.* ¶ ¶ 5-12. Nowhere in the Complaint do Plaintiffs allege the ACS data resulted in their districts unconstitutionally deviating from the 2020 census data. Nor could the Complaint make such an allegation as the 2020 census data will not be available until at least August 16, 2021.

The Complaint even puts Plaintiffs' allegations squarely in question. As Plaintiffs' Complaint alleges, the ACS five-year estimate for total Illinois population was approximately 42,000 people off of the census estimate. Compl. ¶ 5. With a total Illinois census data population of 12,812,508 (*id.*), however, the ACS five-year estimate deviates only approximately 0.3% from the census count—well within the permissible 10% deviation. *Evenwel*, 136 S. Ct. at 1124. It is therefore entirely possible that the census data will establish redistricting plan fully complies with the requirements of the equal protection clause.

Regardless, until such time as the Census Bureau issues the 2020 final census data, Plaintiffs' allegations are purely speculative. Plaintiffs Complaint merely alleges a constitutional violation based on a benchmark that is not yet available. This Court should therefore dismiss Plaintiffs' Complaint for lack of ripeness.

**IV.     Plaintiffs' Complaint Fails to State a Claim for Mandamus Relief Against Speaker Welch and President Harmon.**

Plaintiffs Complaint alleges "Federal courts have authority to issue writs of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a)." Compl. ¶ 98. Accordingly, Plaintiffs request this Court find the redistricting plan to be unconstitutional and void *ab initio*, and request that this Court issue a writ of mandamus to order Speaker Welch and President Harmon to appoint members to a Legislative Redistricting Commission under Article IV, Section 3 of the Illinois Constitution. Compl. ¶ 102.

This Court should hold that Plaintiffs have failed to plead a cause of action for mandamus relief. To secure mandamus relief, a petitioner must allege three elements: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002) (citing *Scalise v. Thornburgh*, 891 F.2d 640, 648 (7th Cir. 1989)). Plaintiffs' cannot satisfy these three elements.

 A. *Plaintiffs do not have a clear right to relief because this Court lacks jurisdiction to order state officials to comply with state law.*

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," but the All Writs Act does not itself create jurisdiction. 28 U.S.C. § 1651(a); *Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 577 (7th Cir. 2005).

As the Seventh Circuit and court within the Circuit have held, this Court lacks "jurisdiction to issue a mandamus against state officials for violating their duties under state law." *Banks v. Illinois* 258 Fed.Appx. 902 (7th Cir. 2007) (quoting

*Coniston Corp v. Village of Hoffman Estates* 844 F.2d 461 (7th Cir. 1988)); *see Tabb v. Jeffreys*, 2020 WL 3414616, at *1 (S.D. Ill. 2020); *White v. Madison County Judicial System*, 2019 WL 6312389, at *1 (S.D. Ill., Nov. 25, 2019); *Leuvano v. State Bar of Tex.* 2011 WL 334291, at *1 (S.D. Ill., Jan. 29, 2011); *Offutt v. Kaplan*, 884 F. Supp 1179, 1187-88 (N.D. Ill. Apr. 12, 1995) (concluding "a federal district court has no general mandamus jurisdiction to compel action by state court officials").

Plaintiffs cannot establish a clear right to relief where this Court lacks jurisdiction to grant it. For this reason, this Court should dismiss Count III.

### B. Plaintiffs cannot establish a clear right to relief because there is no Legislative Redistricting Commission under the Illinois Constitution.

Plaintiffs request this Court issue a writ of mandamus ordering Speaker Welch and President Harmon to appoint members to the Legislative Redistricting Commission under Article IV, Section 3 of the Illinois Constitution. Compl. ¶ 102. The Legislative Redistricting Commission is part of the "back up" provisions in Article IV, Section 3 of the Illinois Constitution. *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 5. The Illinois Constitution provides that "[i]n the year following each Federal decennial census year, the General Assembly by law shall redistrict the Legislative Districts and the Representative Districts. *If no redistricting plan becomes effective by June 30 of that year*, a Legislative Redistricting Commission shall be constituted not later than July 10." Ill. Const. (1970), art. IV, § 3(b) (emphasis added).

Pubic Act 102-0010 was effective prior to June 30, 2021. Under the Illinois Constitution, "[t]he General Assembly shall provide by law for a uniform effective

14

date for laws passed prior to June 1 of a calendar year. The General Assembly may provide for a different effective date in any law passed prior to June 1." Ill. Const. (1970), art. IV, § 3. Article IV, Section 9(a) of the Illinois Constitution provides, "[e]very bill passed by the General Assembly shall be presented to the Governor within 30 calendar days after its passage. The foregoing requirement shall be judicially enforceable. If the Governor approves the bill, he shall sign it and it shall become law." Ill Const. (1970), art. IV, § 9(a). Public Act 102-0010, which was passed by the General Assembly on May 28, 2021, provides that "[t]his Act takes effect upon becoming law." Public Act 102-0010, Section 99. Governor Pritzker signed the bill on June 4, 2021.

Thus, under the provisions of Public Act 102-0010 and the Illinois Constitution, the redistricting plan became effective on June 4, 2021, well before the June 30 deadline. The constitutional prerequisite for the Legislative Redistricting Commission to be constituted was not met.

Even if this Court were to find the redistricting plan is void *ab initio* because it used ACS data rather than census data in drawing that plan[1], under Illinois law, the Illinois Constitution's requirement that a redistricting plan enacted by the General Assembly become effective by June 30 will have still been met.

According to the Illinois Supreme Court, "[w]hen a statute is held facially unconstitutional, *i.e.*, unconstitutional in all its applications, the statute is said to be void *ab initio*." *People v. Blair*, 2013 IL 114122, ¶ 28 (internal citation omitted). "An

---

[1] But see *supra*, Arg. II.

15

unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Id.* (quoting *Norton v. Shelby County*, 118 U.S. 425, 442 (1886)). This is known as the void *ab initio* doctrine.

The Illinois Supreme Court has held, however, that "the void *ab initio* doctrine does not mean that a statute held unconstitutional never existed." *Id.* ¶ 29 (internal quotations admitted). Instead, "[t]he actual existence of a statute, prior to a determination that the statute is unconstitutional, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration." *Id.* (internal quotations omitted). "In short, a statute declared unconstitutional by this court 'continues to remain on the statute books[.]'" *Id.* ¶ 30 (quoting Laurence H. Tribe, American Constitutional Law § 3-3, at 28 (2d ed. 1988)).

As a result, even a declaration by this Court that the redistricting plan is void *ab initio* would not erase the redistricting plan from existence. The plan became effective prior to June 30, 2021; therefore, no Legislative Redistricting Commission may be constituted because a plan deemed constitutionally defective would still have been effective by June 30 under the Illinois Constitution. A remedy, if needed, would not be to mandamus the Speaker and President to appoint members to a commission, but rather to remand the redistricting plan to the General Assembly to pass a new plan in light of this Court's ruling. This Court should therefore find that even if it

16

were to grant Plaintiffs the declaratory relief they seek, it cannot grant the mandamus relief requested.

### C. If the Court finds there is an open question of law over whether the Legislative Redistricting Commission may be constituted, this Court should decline to exercise supplemental jurisdiction over Count III.

Though Plaintiffs' Complaint does not address the jurisdictional issues in their mandamus count, they are effectively requesting this Court exercise supplemental jurisdiction in Count III. They invoke the All Writs Act, but the All Writs Act does not convey jurisdiction. *Hill*, 405 F.3d at 577. The mandamus count seeks a writ ordering state officials to appoint members to a state constitutional commission on the basis of an interpretation of state law. There is no federal question raised in Count III; thus, this Court would only have supplemental jurisdiction based on the federal question jurisdiction of Plaintiffs' equal protection claims.

This Court, however, may decline to exercise supplemental jurisdiction as this "claim raises a novel or complex issue of State law[.]" 28 U.S.C. § 1367(c)(1). Since the adoption of 1970 constitution, the General Assembly has passed a redistricting plan prior to June 30 only twice, in 2011 and 2021. *Hooker*, 2016 IL 121077, ¶ 5; Compl. ¶ 1. In 2011, no attempt was made to constitute a Legislative Redistricting Commission through a judicial process. As a result, if this Court finds it may reach the question of whether the Commission may be constituted, it would be a novel question of state law. This Court should decline to exercise supplemental jurisdiction and dismiss Count III without prejudice to file in the Illinois Supreme Court.

17

*D. Plaintiffs have failed to establish they have exhausted state court avenues of relief.*

The Illinois Constitution provides that the Illinois Supreme Court shall have "original and exclusive jurisdiction of all actions concerning the redistricting of the Illinois House and Senate[.]" Ill. Const. (1970), art. IV, § 3(b). The original and exclusive provision deprives all Illinois Courts except the Supreme Court of jurisdiction to hear redistricting cases. *See Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 13.

A writ of mandamus is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief. *Burnett v. Bowen*, 830 F.2d 731 (7th Cir. 1987) (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). The proper remedy would not be to order state action, but would be to deem Plaintiffs' state remedies exhausted, thus clearing away the obstacle to the court exercising jurisdiction over the case. *In re Campbell*, 264 F.3d 730, 731-32 (7th Cir. 2001). In *Coniston Corp. v. Hoffman Estates*, the Seventh Circuit discusses its grounds for dismissing plaintiffs' claims, noting that:

> We think it useful to add for future reference that the court had in any event no jurisdiction to issue a mandamus against state officials for violating their duties under state law. The interference with the operation of state government from such a mandamus would be disproportionate to the need, which can be satisfied perfectly well (if perhaps with some loss of convenience) by proceeding in state court. The interference would be even greater than that caused by the usual injunction -- and the Supreme Court has held that the federal courts' pendent jurisdiction may not be used as a basis for enjoining state officials from violating state law.

844 F.2d at 469.

18

Even, *arguendo*, if this Court has jurisdiction to mandamus the Speaker and President to appoint members to a state constitutional commission, this Court should still dismiss the mandamus count because Plaintiffs have failed to demonstrate they have exhausted an original and exclusive action in the Illinois Supreme Court.

## Conclusion

WHEREFORE, for the reasons stated, the Presiding Officer Defendants respectfully request this Court dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b).

Dated: <u>July 16, 2021</u>                    Respectfully submitted,

                                              <u>/s/ Adam R. Vaught</u>

| | |
|---|---|
| Michael J. Kasper | Adam R. Vaught |
| 151 N. Franklin Street | Hinshaw & Culbertson LLP |
| Suite 2500 | 151 North Franklin Street, Suite 2500 |
| Chicago, IL 60606 | Chicago, IL 60606 |
| (312) 704-3292 | (312) 704-3000 |
| mjkasper@60@mac.com | avaught@hinshawlaw.com |

*Counsel for Defendants Welch, Office of the Speaker, Harmon, and Office of the President*                    *Counsel for Defendants Welch, Office of the Speaker, Harmon, and Office of the President*

| | |
|---|---|
| Devon C. Bruce | Heather Wier Vaught |
| Power Rogers, LLP | Heather Wier Vaught, P.C. |
| 70 W. Madison St., Suite 5500 | 106 W. Calendar Ave, #141 |
| Chicago IL, 60606 | LaGrange, IL 60625 |
| (312) 236-9381 | (815) 762-2629 |
| dbruce@powerrogers.com | heather@wiervaught.com |

*Counsel for Defendants Welch, Office of the Speaker, Harmon, and Office of the President*                    *Counsel for Defendants Welch, Office of the Speaker, Harmon, and Office of the President*

1042768\308556402.v1

Sean Berkowitz
Latham & Watkins
330 N. Wabash, Suite 2800
Chicago, IL 60611
(312) 777-7016
sean.berkowitz@lw.com

*Counsel for Defendants Harmon, and
Office of the President*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I electronically filed the above Defendants Welch, Office of the Speaker, Harmon, Office of the President of the Illinois Senate's Rule 12(B) Motion to Dismiss, with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

By: */s/Adam R. Vaught*

1042768\308556402.v1